UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
97 SEP 23 AM 4:02

WAYNE KOUF, )
)
    Plaintiff, )
)
vs. ) Civil Action No. CV96-S-2989-S
)
COWLES CREATIVE PUBLISHING, INC.)
)
    Defendant. )

ENTERED
SEP 2 3 1997

MEMORANDUM OPINION

This action is before the court on three motions: defendant's motion for summary judgment; plaintiff's motion for summary judgment against defendant's counterclaim; and defendant's motion to strike portions of plaintiff's affidavit. The dispute arises from a contractual relationship in which plaintiff agreed to market and sell home improvement publications for defendant.[1] That relationship was terminated, and plaintiff claims breach of contract, promissory fraud, and unjust enrichment by defendant. Defendant's counterclaim alleges plaintiff wrongfully retained defendant's property, resulting in claims for conversion and detinue. Upon consideration of the pleadings, motions, briefs, and evidentiary submissions, this court concludes that defendant's motion to strike is due to be denied; defendant's motion for summary judgment is due to be granted in part, but denied in part; and plaintiff's motion for summary judgment is due to be denied.

---

[1] This action originally was filed in the Circuit Court for Jefferson County, Alabama, but removed by defendant pursuant to 28 U.S.C. § 1446, asserting diversity jurisdiction under 28 U.S.C. § 1441. Thus, this court will apply Alabama substantive law, and federal procedural law when deciding the motions for summary judgment. Hammer v. Slater, 20 F.3d 1137, 1140 (11th Cir. 1994).

41

## I. FACTS

Defendant is a nationwide book publisher which distributes home improvement publications as part of its business. Prior to 1996, defendant used a third party to distribute its home improvement publications, and to solicit retail stores to purchase those materials. In 1996, however, defendant began to explore the feasibility of direct marketing to its customers, and retained plaintiff to assist in its marketing efforts. (Christine Benjamin deposition at 11.)

Plaintiff organized and trained independent sales representatives to market defendant's home improvement products.[2] The agreement[3] provided that either party could terminate the relationship, with or without cause, with 60 days notice, and the term of the agreement was for no more than one year. (Defendant's exhibit 1.) Plaintiff was paid 6.5% of defendant's net sales from the home improvement publications. (Plaintiff's deposition at 11-12.) In turn, plaintiff paid his sales representatives a 5% commission on net sales, and retained the remaining 1.5% commission. (*Id.*) Plaintiff began marketing defendant's products on or about May 9, 1996. (Plaintiff's exhibit 4.)

---

[2]Plaintiff also prepared a marketing plan for defendant, for which he was paid a flat fee of $3,500. While the parties dispute the quality of that plan, it does not form the basis for this action.

[3]The parties submitted several drafts of the contract, which were printed on defendant's letterhead. (Defendant's exhibit 1; plaintiff's exhibit 6.) Two of the drafts are executed by plaintiff, but the portion of the contract designated for countersignature by defendant is blank. Plaintiff nevertheless acknowledges the drafts evidence the terms of the agreement. (Plaintiff's deposition at 15.) Every draft allows termination "with or without cause," and provides only for payment by commission.

2

Plaintiff's relationship with defendant was terminated on August 5, 1996, only three months into the arrangement.[4] Defendant mailed $4,000 to plaintiff as final compensation, but plaintiff refused that tender.[5] (Plaintiff's exhibit 4.) Plaintiff alleges he was "led to believe" the agreement with defendant would be "long term," which he interpreted as meaning twelve months or longer. (Plaintiff's affidavit ¶ 12.) Plaintiff further notes that defendant's home improvement publications generated over 1.2 million dollars between May of 1996 and April of 1997. (Plaintiff's exhibit 7: Defendant's response to request for production no. 3.) Thus, plaintiff contends defendant retained him to establish a direct marketing system, with the fraudulent intent to terminate his services just before the system became profitable.

## II. MOTION TO STRIKE

Defendant moves to strike paragraphs 8, 10 and 12 of plaintiff's affidavit submitted in opposition to the motion for summary judgment. Paragraphs 8 and 10, however, form no part of this court's decision, and the motion to strike those paragraphs is moot. See *White v. Wells Fargo Guard Services*, 908 F.Supp. 1570, 1578 n.9 (M.D. Ala. 1995).

Defendant moves to strike paragraph 12, because it allegedly contradicts plaintiff's deposition testimony. (Motion to Strike ¶

---

[4] The parties dispute the reasons articulated by defendant for the termination. That dispute is irrelevant, because the agreement was an "at will" relationship. See IV, A, 1 *infra*.

[5] Defendant's revenues on home improvement publications between May 9, 1996 and September 30, 1996 were $40,171.97. (Defendant's response to request for production No. 3.)

3

12 (citing *Van T. Junkins & Associates v. United States Industries, Inc.*, 736 F.2 656, 657 (11th Cir. 1984).) Paragraph 12 states:

> I entered into this two part agreement with Cowles with the understanding I would have a long term (at least a year or longer) contract with a delayed compensation of four (4) months work by which I would be paid via 1.5 percent commission. I would not have entered into this agreement with Cowles had I known they would terminate our agreement before I could ever receive any commissions. I was led to believe this was a long-term arrangement in which I would eventually recover compensation for time and effort expended.

The court finds the affidavit is sufficiently consistent with plaintiff's deposition testimony:

> Q: They all said from here on out you are going to manage our service representatives?
>
> A: Essentially, yes.
>
> Q: Despite the fact it was a one-year contract?
>
> A: When I say here on out, I mean one year and/or beyond.
>
> Q: And the [sic] despite the fact that there was a sixty-day termination clause by either party?
>
> A: Despite that fact, yes.
>
> Q: But you understood those two facts, that it was a one-year contract and there was a sixty-day termination clause?
>
> A: Yes. I am not refuting — well, we'll get into that.
>
> [Plaintiff's Counsel]: It was a long-term contract?
>
> A: It was a long-term contract, that's correct.

(Plaintiff's deposition at 79.)  There is no "inherent inconsistency" between the affidavit and deposition testimony; therefore, defendant's motion to strike paragraph 12 is due to be

4

denied. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987).

### III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment not only is proper, but

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and designate specific facts showing there exits a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for

5

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249.

### IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**A. Breach of contract**

**1. Wrongful Termination**

Plaintiff's breach of contract claim is based on defendant's alleged failure to compensate plaintiff according to the terms of the contract. (Complaint ¶ 5.) Defendant's motion for summary judgment and plaintiff's response also discuss "wrongful termination" under the contract. The drafts of plaintiff's employment contract state: "This agreement may be terminated by either party, with or without cause, by giving the other party 60 days written notice." (Plaintiff's exhibit 6.) The "with or without cause" language clearly makes the contract an "at will" arrangement. "An employment contract at will may be terminated by either party, <u>with or without cause</u> or justification, and a discharge may be for a good reason, a wrong reason, or for no reason at all." *Reich v. Holiday Inn*, 454 So.2d 982 (Ala. 1984)(emphasis supplied). The parties dispute defendant's reasons for terminating the agreement, but that dispute is irrelevant because the agreement could be terminated for "a wrong reason, or for no reason at all." *Id.* Thus, defendant is entitled to summary judgment, to the extent plaintiff seeks to recover for "wrongful termination."

6

2. **Breach of contract**

Defendant also alleges there was no breach of its obligation to pay plaintiff under the contract, because the contract only provided plaintiff would be paid by commissions. Plaintiff acknowledges the written contract embodies his agreement with defendant,[6] but he believes he should recover all costs for hiring and training sales representatives. Plaintiff previously requested an hourly payment as compensation for his efforts. (Plaintiff's exhibit 11.)

Thus, plaintiff refers this court to Missouri law for the proposition that

> even though a principal has the right to terminate an agency relationship at will, if it does so before the agent has an opportunity to recoup the benefits of his work, labor and expenses, the principal would be liable for that portion of the agent's investment of labor and expenses he has not had a reasonable opportunity to recoup.

(Plaintiff's brief at 4 (quoting *Clark v. Mobile Oil Corp.*, 496 F. Supp. 132, 135 (E.D. Mo. 1980).) The court has found no Alabama law similar to that proposition, and is not certain that Missouri would even apply its common law rule in the face of an express contract regarding the duration of employment and method of payment. *See Want v. Century Supply Company*, 508 S.W.2d 515, 516-17 (Mo.Ct.App. 1974)(discussing the common law rule and its application to "any case of indefinite agency"). Furthermore, Missouri treats the action for compensation as one for *quantum*

---

[6]Plaintiff's deposition at 13-15; *see also* plaintiff's brief at 4 (relying upon drafts to describe plaintiff's "agency agreement" with defendant).

7

meruit, rather than breach of contract. *See Red-E-Gas Company v. Meadows*, 360 S.W.2d 236, 242 (Mo.Ct.App. 1962).

Plaintiff also refers this court to Restatement of Agency (Second) §§ 450 and 455 which discuss compensation when an agency relationship is breached. This court finds, however, that § 452 actually is the more relevant citation, because it provides:

> Unless otherwise agreed, if the principal has contracted to pay the agent for his services and the relation terminates without breach of contract by either party, the principal is subject to liability to pay to the agent for services previously performed and which are part of the agreed exchange:
> (a) the agreed compensation for services for which compensation is apportioned in the contract; and
> (b) the value, not exceeding the agreed ratable compensation, of services for which the compensation is not apportioned.

Comment a to § 452 states that it is applicable "where the principal or agent exercises a privilege of terminating the relationship ... because the employment was at will ...."

The agreed compensation for services for which compensation was apportioned in the parties' contract was 6.5% of net sales. No provision was made for the hourly rate which plaintiff now requests. In fact, plaintiff testified that an hourly fee was never contemplated.

> Q: In the course of those discussions, did you propose a, what I'll call a consultant, hourly type compensation system as opposed to the volume type compensation system?
>
> A: No.
>
> Q: That was never an issue in that part of it?
>
> A: No. At the very beginning I was unsure of which tact or which direction to go, and that is why I

8

> made a phone call to Christine Benjamin[7] at her place of residence on or about January 30th, 1996 to find out which direction she thought I should go in terms of putting together this contract. It was at that point that she indicated Wayne, to protect yourself long term, put together a contract that calls for the consultation fee to be paid up front to deliver the sales and marketing plan and then calls for in the second phase an ongoing commission arrangement for you to run and manage the home improvement channel.

(Plaintiff's deposition at 12-13.) To that end, plaintiff's breach of contract claim requests damages "for commissions due." (Complaint ¶ 6.)

Essentially, plaintiff is not pleased with the terms of the contract he negotiated. Nevertheless, "[plaintiff] is a seasoned sales and marketing expert with over twenty years experience in publishing and related industries." (Plaintiff's reply brief at 1.) Thus, he should have known to place his "understanding" of the agreement in writing. Instead, he negotiated an agreement which gave defendant the power to terminate the relationship before he recovered the full value of his efforts. Now, plaintiff effectively asks this court to reform the contract to protect him from his own mistakes.

> The court must construe and enforce contracts as they are written. The court should not under the guise of construction, make new contracts for the parties, nor should the court add to the terms of a contract words, terms, or conditions not contained in it.

*Estes v. Monk*, 464 So.2d 103, 105 (Ala. Civ. App. 1985). Accordingly, this court will not add plaintiff's request for an

---

[7]Benjamin is defendant's senior vice-president for retail and custom publishing.

9

hourly rate to the terms of his contract with defendant. Defendant offered plaintiff the amount of commissions due;[8] therefore, there was no breach of contract.

B. **Promissory Fraud**

> The elements of fraud are: (1) a misrepresentation, (2) of a material existing fact, (3) on which the plaintiff relied, and (4) which proximately caused injury or damage to the plaintiff. ... Also, in a claim of promissory fraud, the plaintiff must show that at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or acts promised, but intended to deceive the plaintiff.

*Goodyear Tire & Rubber Company v. Washington*, No. 1951582, 1997 WL 339561 at *2 (Ala. June 20, 1997).

Defendant first alleges plaintiff cannot prove that misrepresentations were made. (Defendant's brief at 6.) In response, plaintiff points to the following: (1) defendant allegedly told plaintiff he would work without pay for four months and recoup his expenses by way of future commissions (Plaintiff's affidavit ¶ 12); and (2) defendant allegedly told plaintiff he would be defendant's service representative. (Plaintiff's deposition at 78.) Plaintiff's argument, however, does no more than identify the alleged representations. There is no indication of when those representations allegedly were made, and absolutely no argument or evidence that they were made with a present intent to deceive. (*Id.*)

---

[8] In fact, the $4,000 offer was greater than 6.5% of the alleged $40,171.97 in sales made by defendant.

10

Upon review of the record, this court can identify only one specific occasion on which alleged representations were made.[9] On January 30, 1996, plaintiff spoke by telephone with Christine Benjamin to discuss the structure of plaintiff's contract with defendant. (Plaintiff's answers to interrogatories ¶ 11.) Benjamin allegedly recommended that plaintiff:

> structure something that would pay [him] an up-front consulting fee, and one that would also pay [him] a commission on a LONG-TERM basis to oversee and manage the Home Improvement Channel. It was her recommendation to structure the LONG-TERM commission arrangement in order to adequately compensate [him] for time and effort spent.

(Id.) Despite identifying that statement, plaintiff can present no proof that it was made with a present intent to deceive. In fact, plaintiff acknowledges that any intent to dishonor those representations was not formed until a later date.

> I believe that with the hiring of their new National Sales Manager (who they asked me to interview) sometime in May (?)[10], they realized they now had someone internally they could use to do my job and <u>at that moment</u> had no intentions of fulfilling their obligations to me.

(Id.)(emphasis supplied).

Thus, the alleged representations were made in January of 1996, but no intent to deceive was formed until May of 1996. Plaintiff offers no evidence of intent to deceive when the

---

[9]There may be additional instances when those statements were made, but plaintiff offers absolutely no proof of such occasions. For example, plaintiff testified that a "handful" of defendants employees promised he would manage the home improvement line, but never identified the specific occasions on which those promises were made. (Plaintiff's deposition at 78.)

[10]Neither party identifies the exact date the sales manager was hired, but plaintiff's reference to "May(?)" clearly indicates the manager was hired after January 30, 1996.

11

statements were made, and defendant is entitled to summary judgment with regard to the promissory fraud claim.

C. **Unjust Enrichment**

Count II of plaintiff's complaint, styled "Unjust Enrichment," alleges "Defendants have been enriched by the work of the Plaintiff ... and have failed or refused to compensate the plaintiff for the full value [of] his work and labor." (Complaint at 3.) Plaintiff argues this claim "is an equitable doctrine akin to restitution, which permits the recovery of that amount by which defendant has been unjustly enriched at the expense of plaintiff." (Plaintiff's brief at 6(citing *Ellis v. Smith Grading and Paving, Inc.*, 366 S.E. 2d 12, 14 (S.C. App. 1988).) Thus, plaintiff seeks to recover the value of his time and expertise spent training independent sales representatives, because those representatives were directly retained by defendant after plaintiff was terminated.

Defendant seeks summary judgment on two grounds. First, it relies on the fact that plaintiff could not identify a specific amount of monetary damage when he gave deposition testimony. The court is not persuaded by that argument. Plaintiff previously valued his services at $54,400, and made demand on defendant for that amount. (Plaintiff's exhibit 11.) A jury could make a similar valuation. Thus, summary judgment is due to be denied with regard to that argument.

Defendant also alleges the equitable doctrine of "unclean hands" prevents plaintiff from recovering, and relies on its allegation that plaintiff converted defendant's property.

12

Defendant, however, does no more than cite the general principle that "one who comes into equity must come with clean hands, and that persons are barred if they themselves are guilty of improper conduct in the matters as to which they seek relief." (Defendant's brief at 10(quoting *Harget v. Delta Automotive, Inc.*, 765 F. Supp. 1487, 1492 (N.D. Ala. 1991)).) Both plaintiff and defendant fail to expound on the relationship which must exist between claims before the clean hands doctrine can be applied:

> The misconduct which falls within the clean hands maxim must relate directly to the transaction concerning which complaint is made or the subject matter of the litigation. The misconduct which falls within this maxim must have infected the cause of action, so that to entertain it would be violative of conscience. It is not sufficient that the wrongdoing is remotely or indirectly connected with the matter in controversy.

*Powell v. Mobile Cab and Baggage Company, Inc.*, 83 So.2d 191 (Ala. 1955)(quoting 30 C.J.S. Equity § 98).

Defendant offers no proof that the alleged conversion "infected" the claim for unjust enrichment. Rather, defendant assumes there is a sufficient relationship, because both claims involve the same plaintiff and defendant. The court finds the conversion claim is "indirectly connected" with the claim for unjust enrichment, and the clean hands doctrine is inapplicable. Thus, summary judgment is due to be denied.

### V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

A. Conversion

"To establish conversion, a plaintiff must show a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or

13

interference with another's property." *Birmingham-Jefferson County Transit Authority v. Arvan*, 669 So.2d 825, 828 (Ala. 1995)(quoting *Huntsville Golf Development, Inc. v. Ratcliff, Inc.*, 646 So.2d 1334 (Ala.1994)).

Plaintiff first claims defendant cannot identify items which have been converted by plaintiff. Defendant, however, specifically points to plaintiff's answers to interrogatories and identifies numerous materials retained by plaintiff.[11] Therefore, summary judgment must be denied on that ground.

Plaintiff argues that summary judgment is appropriate because none of the materials supplied by defendant to plaintiff are confidential, and that any potentially confidential materials are "work product," created by plaintiff for defendant. Plaintiff cites no law in support of those arguments. In fact, it is ludicrous to argue that a conversion claim can only be made when "confidential" materials are allegedly converted. Furthermore, Alabama law allows conversion claims when employees retain materials created for their employers. *See National Surety Corp. v. Applied Systems, Inc.*, 418 So.2d 847, 849 (1982)(employees could be liable for converting computer program they created for employer).

Finally, plaintiff claims that defendant cannot prove damages resulting from the conversion, and defendant does not respond to that argument. Plaintiff can demonstrate there is no genuine issue

---

[11] *See* plaintiff's answers to interrogatories no. 9, stating plaintiff possesses: product samples; product catalogs; sales presentation binders; time line/action items outline; 3 year sales & marketing plan; copies of completed new vendor information sheets; copies of certificates of insurance; Black & Decker 11 month, 1995 sales history; customer lists; Home time/CDI contract.

14

of material fact by demonstrating that "the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Plaintiff's argument alleges defendant's evidence of damages is insufficient, but damages are not an <u>essential</u> element of defendant's claim. Rather, the Alabama Supreme Court has clearly indicated that the essential elements of a claim for conversion are "a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." *Birmingham-Jefferson County Transit Authority v. Arvan*, 669 So.2d at 828; *see also Rice v. Birmingham Coal & Coke Company, Inc.*, 608 So.2d 713, 716 (Ala. 1992)(summary judgment reversed where defendant's only argument was that plaintiffs failed to prove damages for conversion). Thus, plaintiff fails to demonstrate there is no genuine issue of material fact, and summary judgment is due to be denied.

B.  **Detinue**

Plaintiff's motion for summary judgment equates defendant's conversion claim with its detinue claim, and makes no distinction between the two. "[I]n order for the plaintiff to be successful in a detinue action, the plaintiff must prove, as of the time that he filed his case, that he had a general or special property right in the chattel sued for, that he had a right to its immediate possession, and that defendant had possession of the property."

15

*Ray v. Blackwell*, 521 So.2d 44, 44 (Ala. Civ. App. 1988). Plaintiff does not challenge any of those elements, and summary judgment is due to be denied.

### VI. CONCLUSION

For the foregoing reasons, the court concludes that defendant's motion to strike is due to be denied; and defendant's motion for summary judgment is due to be granted as to plaintiff's claims for breach of contract and fraud, but denied as to plaintiff's claim for unjust enrichment. Plaintiff's motion for summary judgment is due to be denied.

DONE this the 23rd day of September, 1997.

United States District Judge